Tommy Reed, Executive Director Arkansas Professional Bail Bondsman Licensing Board 101 East Capitol, Suite 117 Little Rock, AR 72201
Dear Mr. Reed:
I am writing in response to your request for my opinion on the following questions:
1. If a change in ownership or corporate structure of a licensed bail bond company results in that company no longer having "at least one (1) owner or partner that has been licensed for at least two (2) years during the preceding three (3) years by the State of Arkansas as a professional bail bondsman," do the provisions of A.C.A.17-19-202(c)(1)(B) (Supp. 2005), apply such that the company license cannot be continued?
2. If the ownership or corporate structure of a company that was initially licensed prior to July 1, 1989, and whose security deposit is less than $100,000, changes, is the company required to increase the security deposit to $100,000?
RESPONSE
In my opinion, the answer to your first question is "yes." There is no clear answer to your second question under either the Board rules or the statutes. Legislative clarification is warranted.
Question 1: If a change in ownership or corporate structure of alicensed bail bond company results in that company no longer having "atleast one (1) owner or partner that has been licensed for at least two(2) years during the preceding three (3) years by the State of Arkansasas a professional bail bondsman," do the provisions of A.C.A.17-19-202(c)(1)(B) (Supp. 2005), apply such that the company licensecannot be continued?
In my opinion, the answer to this question is "yes." Compliance with subsection 17-19-202(c)(1)(B) is an ongoing condition of company licensure, in my opinion.
Subsection 17-19-202(c) provides in pertinent part as follows:
 (1) An application for a professional bail bond company license shall be accompanied by proof that the applicant:
 (A) Is an Arkansas partnership, firm, or corporation, a foreign corporation registered and authorized to conduct business in the State of Arkansas, or an individual who is a resident of the state; and
 (B) Has at least one (1) owner or partner that has been licensed for at least two (2) years during the last three (3) years by the State of Arkansas as a professional bail bondsman.
A.C.A. § 17-19-202(c)(1)(B) (Supp. 2005) (emphasis added).
The emphasized subsection 17-19-202(c)(1)(B) clearly envisions that every operating bail bond company will have an experienced bondsman on board, to be evidenced by having at least one licensed owner or partner who has been such during two of the three previous years. In my opinion, this requirement applies not only at the time of application, but on an ongoing basis. To conclude otherwise would contravene the general requirement of a common sense approach to statutory construction.See Keith v. Barrow-Hicks Ext., Imp. Dist. 85, 275 Ark. 28, 88,626 S.W.2d 951 (1982) ("We have long held that statutory construction requires a common sense approach.") It would not be sensible to require a seasoned owner or partner when making application for a professional bail bond company license, but not thereafter. The Arkansas courts have long held, moreover, that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479, 484,987 S.W.2d 257(1999).
The Rules and Regulations of the Arkansas Professional Bail Bondsman Licensing Board ("the Board") appear to confirm this view of the statute by requiring the following:
 Changes in ownership or changes to the corporate structure of any Arkansas licensed bail bond company shall be transmitted to the Board via a completed bail bond company application indicating the change. Criminal record checks will be submitted for those owners/officers/directors/stockholders/partners not previously listed.
Rule and Reg. 1, Sec. 15(C), Arkansas Professional Bail BondsmanLicensing Board Rules and Regulations (2005 ed.).
This rule clearly has reference to A.C.A. § 17-19-202(c)(1)(B). By requiring the transmittal of changes in corporate ownership or structure, the Board can remain informed regarding a company's compliance with this subsection. As explained above, requiring continued compliance with subsection 17-19-202(c)(1)(B) in my opinion accords with the spirit and the intent of this legislation.
Question 2 — If the ownership or corporate structure of a company thatwas initially licensed prior to July 1, 1989, and whose security depositis less than $100,000, changes, is the company required to increase thesecurity deposit to $100,000?
I assume that this question is asked with regard to a change in ownership or structure that results in no owner or partner who satisfies subsection 17-19-202(c)(1)(B). I also assume that the company does not reincorporate. If there is a different company following the change in ownership or structure, it reasonably follows that a new company license will be required, clearly triggering the $100,000 security requirement, which is set forth in A.C.A. § 17-19-205 (Repl. 2001) as follows:
 (a)(1) An applicant for a professional bail bond company license shall file with the Professional Bail Bond Company and Professional Bail Bondsman Licensing Board an irrevocable letter of credit from an Arkansas chartered bank or a federally chartered bank in Arkansas or a certificate of deposit.
 * * * (C) The minimum amount for any professional bail bond company initially licensed after July 1, 1989, shall be one hundred thousand dollars ($100,000).[1]
With these assumptions in mind, your question, restated, is whether a bail bond company that was initially licensed before July 1, 1989, and therefore subject to a lower security amount (see n. 1, supra), loses its status regarding the security deposit when its ownership or corporate structure changes and it no longer has an owner or partner who has been licensed for at least two years during the preceding three years as required by A.C.A. § 17-19-202(c)(1)(B), supra.
There is no clear answer to this question under either the Board rules or the statutes. Although, as discussed above, a Board rule requires that "[c]hanges in ownership or . . . corporate structure . . . shall be transmitted to the Board via a completed bail bond company application indicating the change," it is unclear whether this "application" is considered an application for initial licensure so as perhaps to trigger the $100,000 security requirement under subsection 17-19-205(a)(1)(C),supra. Compare Rule and Reg. 1, Sec. 18(E) (providing that any "renewal applications" received after December 31 "will be treated as applications for initial license" and will require completion of "the entire licensing process.")[2] It also bears mentioning that apart from setting a December 31 expiration date and requiring renewal of all licenses (see n. 2, supra), the statutes are silent regarding the circumstances under which a company's original license might automatically be forfeited such that any subsequent license issued to that company is considered an initial license.
This leaves very little basis to opine that a change in ownership or corporate structure either is or is not correlated with an initial license application so as to trigger the higher security deposit requirement that applies to companies initially licensed after July 1, 1989. Legislative clarification is warranted.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE
Attorney General
MB:EAW/cyh
[1] The minimum amount is $25,000 for companies initially licensed on or before July 1, 1989 (A.C.A. § 17-19-205(a)(2)(B)), except for companies that were initially licensed under Act 400 of 1971 prior to March 8, 1989. The latter companies are only required to file security in a minimum amount of $5,000. Id. at (a)(2)(D).
[2] This rule is consistent, in my opinion, with the statute governing expiration and renewal of licenses — A.C.A. § 17-19-207 (Repl. 2001) — which provides that "[e]very license . . . shall be for a term expiring on December 31 following the date of its issuance, and it may be renewed for the ensuing calendar year upon the filing of a renewal application." Id. at (a).